THE STATE OF OHIO, APPELLEE, *v.* TAYLOR, APPELLANT.
THE STATE OF OHIO, APPELLEE, *v.* BOBULSKI,
APPELLANT.

[Cite as State v. Taylor (1978), 61 Ohio App. 2d 209.]

(Nos. 78AP-397 and 78AP-505—Decided December 14, 1978.)

*Mr. George C. Smith,* prosecuting attorney, and *Mr. William A. Reddington,* appellee.

*Messrs. Cassidy, Niehoff & Meeks,* for appellant *Stephen F. Taylor.*

*Messrs. Abraham, Purkey & Levy,* for appellant *James J. Bobulski.*

MC CORMAC, J. These cases have been consolidated for appeal as the same legal issues are applicable to both. Defendant Taylor was charged with one count of possession of marijuana, and defendant Bobulski was charged with one

count of possession of marijuana and two counts of possession of Schedule II drugs. Both defendants filed timely motions to suppress physical evidence seized and statements made, all of which were overruled. Thereafter, Taylor entered a plea of no contest to attempted trafficking in marijuana, and Bobulski entered a plea of no contest to trafficking in marijuana. Both defendants were found guilty and sentenced accordingly.

From the judgment of the trial court, defendants have appealed, setting forth the following assignments of error:

1. "The trial court erred in overruling appellants' motion to suppress physical evidence obtained through a warrantless search of appellants' apartment in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States and Section 14 Article I of the Ohio Constitution."

2. "The trial court erred in overruling appellants' motion to suppress physical evidence obtained through a warrantless seizure of evidence in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States and Section 14 Article I of the Ohio Constitution."

3. "The trial court erred in overruling appellants' motions to suppress statements made to authorities after their arrest in violation of the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States and Article I Section 10 of the Ohio Constitution."

Two Columbus police officers assigned to the narcotics bureau had an apartment located at 28 East Sherman Avenue, Columbus, while conducting a surveillance on October 26, 1977. At about 9 a.m., defendant Bobulski entered the apartment carrying a gym bag and a guitar case. The apartment building is located about forty yards from the street and is surrounded by a chain link fence with a gate. There is a walkway entrance which runs along the apartment from the street sidewalk, which is used for entry to the various apartments located therein. At the time Bobulski was seen, the police officers were observing the apartment from the alley. After being informed by another surveillance crew that Bobulski had entered the apartment, a police officer walked along the sidewalk within the gate used for traf-

fic to the various apartments, and from the apartment sidewalk looked into the apartment which had a large bay window in front with no curtains or other obstructions, other than a hanging plant which came down about a quarter of the way in the window. At that time, Officer Stevens observed Bobulski and Taylor inspecting plastic baggies containing a brownish substance. From Officer Stevens' experience, the substance and the type of packaging was of the manner usually associated with marijuana which has been bagged for sale. According to Officer Stevens, from what he observed through the window, he "suspected the brownish substance was marijuana." Stevens then went to the door, knocked and got no response. He knocked again and still received no response. After hearing some noises inside the apartment, he jumped back off the porch onto the apartment walkway, looked into the bay window and saw that "Mr. Taylor had gathered up the marijuana into his arms in the bag and was making it towards the dining room or rear portion of the apartment and was looking back towards the front." Stevens stated: "I don't know if he actually saw me***." Another detective ran to the back and apprehended Taylor as he was coming out the backdoor of the residence.

The officers searched the back of the apartment for discarded marijuana and did not find any. They then saw a substance lying on the floor in the kitchen, whereupon they entered the kitchen to seize the marijuana and to arrest Bobulski, Taylor already having been arrested. After entering the apartment, they saw, in the open guitar case, plainly visible bottles containing several thousand Schedule II drugs and a plastic bag which contained pharmaceuticals. Admittedly, Officer Stevens' initial purpose in entering the apartment area from the street, on the walkway, was to visually investigate what could be seen inside the apartment, without, in the words of Officer Stevens, "committing trespass." There were no "No Trespass" signs at the sidewalk and the apartment sidewalk was freely accessible to those persons choosing to use it.

After defendants were arrested, they were taken to Columbus Police Headquarters where, after being advised of

their *Miranda* rights, and signing *Miranda* waivers, they made incriminating statements concerning their possession of the illegal narcotics.

The trial court overruled all of the motions to suppress, ruling that the police officer who made his observations from the walkway within the apartment complex was not a trespasser and was rightfully at that position for observing what he was able to observe. The trial court found that what the officer observed gave him probable cause to make the arrests and to seize the contraband in plain view, and that, since the search and seizure was legal and there was no other basis for suppressing the statements, they were also admissible.

The first two assignments of error are combined for discussion as they are interrelated.

The first issue is whether Officer Stevens violated defendants' Fourth Amendment right against unreasonable searches and seizures by entering onto the apartment complex walkway to observe defendants' actions through the window of their apartment.

Appellants rely primarily upon the case of *Katz* v. *United States* (1967), 389 U.S. 347, where it was held that there was a violation of the petitioner's Fourth Amendment rights when his calls from a telephone booth were monitored through an electronic device. However, in *Katz,* the United States Supreme Court made the following comment pertinent to this case:

"***[t]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. * * * But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." (Page 351.)

The defendants herein made no particular effort to preserve as private what Officer Stevens saw when they opened the guitar case and exposed the marijuana in plastic bags to view in front of a window not protected by drapes or other obstructions. However, appellants seek a declaration that the observation of that activity by Officer Stevens constituted an illegal search by asking us to draw the narrow

guideline that, even though there was not an expectation of privacy from other occupants of the apartment complex or their invitees, there was such as related to a suspicious police officer who enters onto the sidewalk without invitation or other business in the apartments. We do not believe that that narrow distinction should be made. Officer Stevens had a right to use the semi-public walkway for purposes of observing illegal activity taking place within plain view of that walkway. There was no trespass that took place; thus, distinguishing this case from that of *United States* v. *Carriger* (C.A.6, 1976), 541 F. 2d 545, where narcotic officers entered an apartment house which could only be opened by a key or by someone inside activating a buzzer system by surreptitiously slipping into the building, thus gaining a vantage point from which to observe illegal activity. In this case, there was no physical invasion of a protected area so that whatever was observed by the officer was usable in determining probable cause for arrest. Officer Stevens was not a trespasser but a licensee who had a right to be on the sidewalk within the premises, even though the purpose was to observe potentially illegal activity.

This case is clearly distinguishable from that of *State* v. *DeShong,* unreported, Franklin County Court of Common Pleas No. 43347, decided October 21, 1966, where the arresting officers left the sidewalk and came up to the front of the house pushing aside shrubbery in front of a bedroom window and then peering through a small gap under the venetian blind to observe illegal activity. In this case, there was no invasion of the curtilage as in *DeShong,* nor did the defendants herein attempt to conceal their activities from other members of the public.

What is seen while legally investigating a crime is not subject to the "plain view" doctrine requirement that the sighting of the contraband must be inadvertent. The trial court properly found probable cause for an arrest for a narcotics violation based upon Officer Stevens' testimony of his observations. A reasonable person was entitled to believe that the defendants were trafficking in marijuana based on what was observed by Officer Stevens from the walkway even without the ambiguous action of Taylor in hastily leaving the apartment through the rear door.

The arresting officers were justified in entering the house to arrest Bobulski and to seize the contraband which was in plain view of the officers. The seizure of the evidence was a proper incident to the lawful arrests.

Assignments of error numbers one and two are overruled.

The third assignment of error is overruled on the basis that no grounds were advocated for the suppression of the incriminating statements other than the fact that they were fruits of an illegal arrest and search. Since the arrests and search were not illegal, neither was the obtaining of the statements.

Appellants' assignment of error number three is overruled.

All appellants' assignments of error having been overruled, the judgment of the trial court is affirmed.

*Judgment affirmed.*

WHITESIDE AND REILLY, JJ., concur.