The STATE of Ohio, Appellee,

v.

CRAWFORD, Appellant.

[Cite as *State v. Crawford,* 151 Ohio App.3d 784, 2003-Ohio-902.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 19316.

Decided Feb. 28, 2003.

Mathias H. Heck, Jr., Montgomery County Prosecuting Attorney and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Arvin S. Miller, Assistant Public Defender, for appellant.

---

FAIN, Presiding Judge.

{¶ 1}  Defendant-appellant Matthew G. Crawford appeals from his conviction and sentence, following a no-contest plea, for possession of cocaine in an amount

less than five grams. Crawford contends that the trial court erred by denying his motion to suppress evidence. We conclude that the trial court erred when it found that the opening of a folded-up paper package, retrieved from Crawford's pocket as part of a weapons search, was within the scope of Crawford's consent. The trial court found that the opening of the folded-up paper package exceeded the scope of a weapons search. We conclude that the state of the evidence in the record permitted the trial court to make that finding. Given that finding, the trial court erred when it denied Crawford's motion to suppress evidence obtained as a result of the search. Accordingly, the judgment of the trial court is reversed, and this cause is remanded for further proceedings.

## I

{¶ 2} The facts are set forth in the trial court's decision, as follows:

{¶ 3} "Officer Nathan Via and his partner Officer Geiger came into contact with Michael Crawford at approximately 8:00 p.m. on October 31, 2001, near the intersection of Stanley Avenue and Brandt Pike. Officer Geiger was driving the cruiser with Officer Via being the front seat passenger. Officer Via, as is his custom when on patrol, had the passenger side window partially rolled down. Officer Via testified that while the cruiser was stopped for a traffic light at the intersection of Stanley Avenue and Brandt Pike he heard someone yelling. Officer Via looked to his right, and observed an individual, who turned out to be Mr. Crawford, standing near the intersection and talking on a cellular telephone in a loud and agitated fashion. Mr. Crawford, additionally, was waving his free arm about.

{¶ 4} "The Officers, given Mr. Crawford's actions, decided to make contact with Mr. Crawford to determine the nature of the problem he was apparently experiencing. Officer Geiger pulled through the intersection, turned the cruiser around and stopped the cruiser next to Mr. Crawford. Officer Via testified that when the cruiser was turned around he observed a white female walking east on Stanley Avenue and that Mr. Crawford was yelling at the female.

{¶ 5} "When the Officers pulled beside Mr. Crawford, Officer Via asked Mr. Crawford if he could talk to him and Mr. Crawford assented. Officer Via asked Mr. Crawford if there was a problem. Mr. Crawford indicated that everything was 'O.K.' Officer Via noted, however, that Mr. Crawford was sweating profusely, and that he appeared to bè agitated. Officer Via testified that soon after the encounter with Mr. Crawford began Mr. Crawford placed his right hand into his right pants [pocket]. Officer Via asked Mr. Crawford to remove his hand from the pocket and Mr. Crawford complied.

{¶ 6} "Officer Via also noticed that Mr. Crawford's right hand was bleeding. Officer Via inquired about this and Mr. Crawford informed him that he injured his hand when he intervened in a fight between his cat and dog.

{¶ 7} "Officer Via, at this point, asked for identification. Mr. Crawford did not have any identification, but he supplied his social security number which Officer Geiger inputted into the cruiser's LEADS computer.

{¶ 8} "Officer Via asked Mr. Crawford if he had any weapons, and Mr. Crawford indicated that he did not. Officer Via, despite Mr. Crawford's response, asked Mr. Crawford if he could perform a pat-down search for weapons. Officer Via testified that after the pat-down question was asked Mr. Crawford assumed a search position by placing his hands on the cruiser and spreading his legs. Officer Via proceeded to perform a pat-down search of Mr. Crawford's outer clothing. It is noted that [though] it was October 31 that the weather was quite moderate and Mr. Crawford was wearing a T-shirt and a pair of pants.

{¶ 9} "Officer Via testified that as he was performing the pat-down search he felt an object in the pocket of Mr. Crawford's T-shirt that was 'angular and kind of hard.' Officer Via testified that he did not know what the object was, but that he thought it was possibly a box cutter blade. This possibility came into Officer Via's mind because the object had a triangular shape similar, in Officer Via's mind, to the shape of a box cutter blade.

{¶ 10} "Officer Via asked Mr. Crawford about the object in his T-shirt. Mr. Crawford informed Officer Via that he did not know what the object was. Officer Via then asked Mr. Crawford if he could remove the object; Mr. Crawford agreed, but he also indicated that the object was not a weapon.

{¶ 11} "Officer Via removed the object from Mr. Crawford's T-shirt. The object was wrapped in tissue paper. Officer Via testified that he removed the tissue paper to determine the nature of the hard, triangular object. The tissue paper removal revealed a small triangularly folded piece of paper. This, of course, was the hard, triangularly shaped object that Officer Via had felt. Officer Via unwrapped the paper. Inside the paper was a white powder which turned out to be the cocaine sought to be suppressed.

{¶ 12} "It is finally noted that Officer Via quite candidly told the Court that if he had not obtained Mr. Crawford's consent to perform the search he, in his mind, would not have had any authority to search Mr. Crawford."

{¶ 13} Crawford was arrested and charged with possession of cocaine. He moved to suppress the evidence, contending that it was obtained as the result of an unlawful search and seizure. Following a hearing, the trial court denied his motion to suppress. Thereafter, Crawford pled no contest, was found guilty, and was sentenced accordingly. From his conviction and sentence, Crawford appeals.

II

{¶ 14}   Crawford's sole assignment of error is as follows:

{¶ 15}   "The trial court erred by overruling Mr. Crawford's motion to suppress evidence recovered from the illegal seizure and search of his person."

{¶ 16}   Crawford argues that at some point during his encounter with the police officers, it became a seizure, rather than a consensual encounter.   He asserts that at some point, he was no longer consenting but was acquiescing to a show of authority.

{¶ 17}   We have reviewed the transcript, and we are satisfied that the entire encounter, up to the point that the cocaine was found and Crawford was arrested, was consensual.

{¶ 18}   Crawford also contends that the officer's search exceeded the scope of Crawford's consent to search.   We agree.

{¶ 19}   Officer Via became concerned about the possibility that Crawford might have a weapon when Crawford put his hand in his pants pocket a second time.   Via asked Crawford whether he had any weapons, and Via said that he did not.   Via then asked Crawford: "if you don't mind real quick, I'd like to pat you down just to make sure."   To which Crawford responded: "I don't have any problems."

{¶ 20}   Via found nothing at Crawford's waist band and nothing in either pants pocket.   Via noted that Crawford did have a shirt pocket, and patted that area down.   Via felt an object that "was angular and * * * kind of hard in nature."   Via did not know what this object was and asked Crawford what it was.   Crawford said, "I don't know what it is."   Via said, "Well, it's in your pocket."   Crawford responded, "I don't know what it is."

{¶ 21}   Via then asked Crawford if he could retrieve this object.   Crawford's response was, "Yes, you can retrieve it.   But I don't know – I don't know why you would want to do that because it's not a weapon."   Via removed the object and found it to be a hard angular object wrapped in a piece of tissue paper.   Via unwrapped the tissue paper, and found within a folded piece of paper that was triangular in shape.   This object was "a little bit larger" than a pad of post-it paper measuring approximately 1½ inch by 1 inch.

{¶ 22}   When Via was asked whether this object was stiff, indicating metal inside it, he responded as follows:

{¶ 23}   "It was stiff enough that without opening, I could not manipulate it. I—I mean, I could sit there and probably fold it, but at that point, as I'm pulling it out, I'm going to go ahead and open it based on what I am seeing."

{¶ 24} Via testified that he could not exclude the possibility that the object inside the folded-up paper was a weapon, possibly a box cutter blade, until he unwrapped the folded-up paper, revealing the cocaine within. The folded-up paper package itself was not received in evidence at the hearing and does not appear to have been shown to the trial court. In its decision, the trial court found that "Via would have had the authority [as part of a search for weapons] to remove the tissue paper, but once he observed that the hard, triangular object was a folded-up piece of paper, he would not, in this Court's opinion, have had the authority to open the folded-up paper because this would have exceeded the scope of a legitimate search for weapons."

{¶ 25} We disagree with the trial court's conclusion that Crawford's consent to the retrieval of the object from his pocket, as part of a search for weapons, included consent to examine, manipulate or open that package beyond the extent needed to determine whether it contained a weapon. The context in which Crawford's consent was requested was clearly limited to a search for weapons. Crawford alluded to this context in his consent when he said, "Yes, you can retrieve it. But I don't know—I don't know why you would want to do that because it's not a weapon."

{¶ 26} In our view, Crawford merely consented to the retrieval of the object from his pocket, and its examination, manipulation, or opening to the extent that the officer could exclude the possibility that it was a weapon. Accordingly, when the officer persisted in his examination beyond that point, it was not authorized by Crawford's consent. Whether a search is authorized by consent or by warrant, the scope of the search is limited by the terms of its authorization. *Walter v. United States* (1980), 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410. "[A] warrant to search for a stolen refrigerator would not authorize the opening of desk doors." Id. at 657, 100 S.Ct. 2395, 65 L.Ed.2d 410. By analogy, Crawford's consent to the retrieval of the object from his shirt pocket as part of a weapons search did not extend to the opening of the object's packaging once there was no reasonable likelihood that a weapon might be found within. This would be analogous to the police, searching for a stolen refrigerator, looking in a closet large enough to hold the refrigerator and finding a box. If the box were not large enough to hold the refrigerator, the police would not be justified in opening the box as part of an authorized search for the refrigerator, even though the original search of the closet was authorized.

{¶ 27} Via testified that he could not exclude the possibility of a weapon until he unfolded the inner paper package, revealing the cocaine. The trial court did not accept this testimony. The trial court found that a legitimate search for weapons ended when Via opened the outer layer of tissue paper. Via's testimony concerning the dimensions of the inner, folded-up paper package and his admis-

sion that he could "probably fold it" supports the trial court's conclusion that once the tissue paper had been opened, Via no longer had a proper basis to continue searching the package for a weapon.

{¶ 28} Crawford's sole assignment of error is sustained.

### III

{¶ 29} Crawford's sole assignment of error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings.

Judgment reversed
and cause remanded.

WOLFF and GRADY, JJ., concur.